Case No. 16-1290, Press Communications, LLC, Appellants v. Federal Communications Commission Mr. Cole for the Appellant, Ms. Sunda Raison for the Appellee, Mr. Murchison for the Intervenor Thank you, Your Honor, and may it please the Court, I'm Harry Cole, Counsel for Press Communications LLC. At the Counsel table with me this morning is my colleague, Anne Goodwin Crump, and I would advise the timekeeper that I'd like to reserve three minutes of my time for rebuttal. I actually am obliged to make a disclosure here. I actually attended Atlantic City High School for two years in 1949 and 1950. I went away to boarding school after that. I had checked, and that is not a grounds for recusal, but I thought it should be disclosed. Were you a DJ on their radio station? I applied for a DJ, but not at Atlantic City High School. I was rejected on the grounds that I had a bad accent, but the truth of the matter is I wasn't any good. Thank you, Your Honor, duly noted. Press's application to improve the facilities of its station, WBHX, was dismissed by the SEC because the application supposedly proposed two impermissible short spacings, but one was between stations WZBZ and WAJM, and the other was between WZBZ and WJBR. The SEC was wrong on both counts. Press's application did not involve any impermissible short spacings. This morning, I'd like to address both of the supposed short spacings, but before I start... Your Honor, there was one thing that was particularly troubling to me. Your application involved an involuntary shift of another station. That's correct, Your Honor. And the SEC says, well, if it's involuntary, you have to ask for a waiver, certainly. Now, there's an argument you might have to ask for a waiver anyway, but they say, for sure, when your application would involve an involuntary shift of somebody else, you have to ask for a waiver. What's wrong with that position? Well, Your Honor, first, the notion of voluntary versus involuntary is not a matter of... is not a material factor in any of the SEC precedent. Well, no, and the issue has not come up one way or another before, right? This is the first case. As far as I'm aware, that may be the case, but... Well, why... But, Your Honor, in... Agencies can move through adjudication dealing with new matters as they come up. Well, that's correct, but it's... but the SEC has, on multiple occasions for a long time, back 40, 50 years, required involuntary transfer... involuntary channel changes that did not involve short spacings at all, and the SEC has... But this does involve short spacings. It does involve a short spacing, Your Honor, but also, since... This is a new... this is a new situation. There's no precedent for this situation. That's... that's correct, Your Honor, as far as I'm aware. So then why can't the FCC be entitled to say that this, at least in this situation, we require an application for a waiver? Well, to the extent that the Commission has a policy about any kind of waivers, I think we've discussed that, that it requires a showing by a short-spaced proponent that there be no... that... But those prior cases did not involve involuntary... That's correct, Your Honor, but, again, the end result of this is, if the Commission denies our application, the Commission is left with a FM channel arrangement, which... Well, we don't know what would happen if a waiver had been sought. Well, to the extent, Your Honor, that we required... that there was a waiver required, a waiver request required, we prevented... we presented the... all the information the Commission has sought... But you didn't ask... you didn't ask for a waiver? We presented the evidence that the FCC has repeatedly asked for in situations such as this. In cases where there was not an involuntary shift. That's correct, Your Honor, but there was no... given the fact that there was no precedent indicating that we needed to do anything more than what had been done in the past... So the agency has to have precedent for making a request for an applicant? Well, if the agency is going to impose a pleading requirement or a substantive requirement on the applicant, it seems to me the agency has to give the applicant notice... Well, they did. They said, you're going to need a waiver. You want to file one, and then you didn't. Well, we made the necessary showing. What are we supposed to say? They didn't... They said, do you want to seek a waiver? And you didn't take them up on that. So I think the notice issue is a non-issue, unless I'm missing something. Well, Your Honor, so they say, okay, you asked for a waiver. What do we say? We say, here's the showing that everybody else has ever had to make. You deliberately made a decision, as Judge Pillard points out, not to seek the waiver the FCC asked for. Not to include the language, we request a waiver. That's correct, Your Honor. Right. Now, you did that deliberately with the presumed knowledge that that was a risk if you sought a waiver, and you wanted to argue you didn't need a waiver. We wanted to argue that we had made the necessary showing, yes, Your Honor. You didn't want to ask for a waiver because there was a risk, you felt there was a risk you might be turned down. I mean, we're all reasonably good lawyers. We can figure out what you... Well, that was a costly choice, wasn't it? Your Honor, as far as we were concerned, we analyzed every case that had come down. We understood that the FCC was, with respect to short spacings, short space situations, attempting through a long line of precedent to allow them... If the FCC had denied the waiver, you could then have claimed that it was arbitrary and capricious to deny the waiver because denying the waiver was inconsistent with the standards they applied in the past. You could have had that argument, but you don't have it because you didn't seek a waiver. But there have been no standards in the past. No, this was a new case. So I have a question about the substantive standards. The FCC has directed us to the note 73.203, which seems to say that the grandfathering provision in 73.213 doesn't apply to minor modifications like this one.  Well, the answer to that is there's ample precedent, Your Honor, both on the short spacing side and the non-short spacing side, that permits where the Commission has permitted precisely this kind of change based on the showing that we have made. In addition, I should point out that the FCC did not mention that section or that note in its decision. As I recall, that just pops up in their brief. So do you believe that presents a chenary problem? That they didn't raise the issue below? Yes, Your Honor. And I guess if I could get back to your point, Judge Silverman, very briefly at least, the bottom line here is whether or not we ask for a waiver, the FCC's end result, and I understand what you're saying, but the end result is that the FCC will be approving a situation that is demonstrably inferior under FCC precedent to what would be the case if PRESS's application were grant. Well, they've made a public interest determination to the contrary, right? I mean, you've made an argument that it's inferior, but they've made the contrary determination. Without considering, Your Honor, as far as I can tell, either in the decision or in their brief, the fact that PRESS's application would have eliminated an existing short spacing. Which one is that? Understand that these are all New Jersey, and New Jersey is very congested spectrum-wise, a lot of radio stations, and they've been bunched up for lots of years. Well, I don't think it's useful to condemn New Jersey. I feel bad about that. Your Honor, I'm promoting New Jersey. But the WBZBC was subject to a short spacing with WBHX. If WBZBC moved channels as proposed by PRESS, that short spacing would be eliminated. So there would be net loss of one short spacing, which is all to the good commission precedent firmly supports that. You would not be any worse off because, as we said in the brief, the WZBZWJBR short spacing, which the commission has claimed to be problematic, would not change in any respect whatsoever. They would still be precisely 105 kilometers apart. They would still be on first adjacent channels. There would be no change at all as far as the short spacing situation there. So what the commission is doing is accepting the situation. Your position is it eliminates the short spacing because it eliminates the board's statute. No, no, no, that's a third short spacing. That's the other short spacing that I want to talk about today. The JBR one is the one involving the waiver and the involuntariness. The AJM is the lack of renewal application. But if WZBZ were to be moved as proposed, the net result would be no worsening at all of short spacing, but in fact an improvement of short spacing under well-established FCC criteria. So our position has been that the commission cannot legitimately – it's arbitrary and capricious for the commission to conclude that something that is demonstrably worse is preferable to something that is demonstrably better. Now, if I could get to the WAJM. Do you have any further questions on that, Your Honor? On WAJM. That's the Atlantic City High School. That's your emblematic, Your Honor. Well, I wouldn't put it that way. That's the scene of the crime. The Communications Act specifies that unless there's a license for renewal application pending, a broadcast license in all related rights exists only for the term of the license, and a license term shall not extend longer than eight years. The FCC claims that when PRESS filed its application in August of 2010, PRESS was required to protect the licensed facilities, those are the FCC's terms, of WAJM. But AGM's license had expired four years before, and there was no renewal pending. So statutorily, when PRESS filed its application, WAJM was without a license or any related rights, and PRESS was not required to protect it. To the FCC, though, a license expiration date is largely immaterial. Because for support, they point to this FCC-generated, uncodified agency policy, and the policy provides that after expiration, eight years come, eight years go, no renewal is filed, a license still remains, in effect, indefinitely, in a kind of unspecified zombie-like state, unless and until the FCC eventually gets around to issuing a public notice, and the public notice only says the expiration date has come and gone. And that supposedly serves as what the FCC refers to as a cancellation of the license, and at that point, the dead licensee still has a right to seek reconsideration of the cancellation. And there's no particular pressure agency-wide to issue this cancellation notice, because as we've seen, as you pointed out in the brief, licenses can remain and have remained, in effect, for weeks, months, years, and even decades after the expiration date. So essentially, the FCC, through this policy, has been allowing itself to extend licenses indefinitely, which is flatly inconsistent with the mandatory eight-year statutory limit in the statute. I think they would frame it a little more narrowly. I mean, obviously, we'll hear from them, but not that they're extending the license indefinitely, but that they are recognizing a renewal priority or a residual priority in the prior license holder. Well, again, Your Honor, the statute provides that license and all rights related thereto. Right. I understand your position on that is very clear in the briefing, and I think the question for us is whether that cutting off of the station's rights eliminates any authority in the commission to, for example, do what it's done now in having a policy that they'll notify people of lapse and say, you know, do you want to renew. They're doing some housecleaning, but does the limitation on the station holder's right necessarily also limit the authority of the commission? I don't think so, Your Honor, because the— You don't think so? I do not think so. I don't think it— The— I don't think— What we're arguing— I think your argument is—I think your argument is it does. What we're arguing is not that the FCC cannot renew or reinstate or whatever verb you want to use, a license which is dead and gone a couple of years down the line. What we're saying is that the FCC cannot, prior to the filing of that license application, accord that dead licensee any rights because according them rights is contrary to the statute. What about once the license application is filed? It says, okay, you didn't have any rights before, but now you've filed an application, and, you know, we recognize that you've been operating all this time, and so we're going to penalize you for that, but we also recognize you've been operating all this time. So once you pay the penalty, we're going to nunk-pro-tunk treat you as continuously licensed. There are a couple of problems with that, Your Honor, mainly that that effectively waives the deadline to the advantage of— No, no, they've—as they argue, they've penalized the violation of the deadline. Yeah, but they let the application back in the door. So your argument is it's contrary to the statute? Yes. Your argument is that we have to read 301 to prohibit the commission from giving any priority to an incumbent station whose license has lapsed. I'm arguing, Your Honor, that 301 prohibits the FCC from according any rights to a station whose license has expired and for which there is no license renewal pending. I'm trying to distinguish between the rights of the station and the prerogatives of the FCC as regulator. There are no rights in the station, and so if the FCC doesn't want to give incumbency priority for renewals, it doesn't have to, but let's say the FCC does want to do that and say, you know, you have no rights, but here we as regulator are going to organize renewals in a way that says, you know, we think it's in the public interest to have continuities. People sometimes miss the deadline. We're going to give a priority now within a maybe cabin period of time to the actual incumbent station. You don't have a right to that, folks, but we're going to create a policy in which we allow you to do that. I think that's beyond the authority of the commission because of 301. I think that's beyond 301. Congress specifically said if you have a license, you've got these rights, and that's that, and I don't think the Congress contemplated in any way, shape, or form that the commission could then say, okay, fine, here's your eight years, but we're going to give you another ten. Wait a minute. You would not object. You wouldn't say the FCC couldn't do that if nobody else's interests were at stake, would you? Suppose the Atlantic City station had applied for renewal and nobody else was involved, and the FCC said, well, you lost your rights under the statute, but nevertheless we're going to allow you to have a renewal or a new license because you have the expertise and there's no reason not to give it to you. Is it your suggestion the FCC wouldn't have authority to do that? The FCC has done that repeatedly, but in situations where there is no intervening person like press, and whether or not the FCC could properly do that under the statute, I do not think so, Your Honor, but in a situation where there's no blood, no foul, and nobody's going to appeal it, it happens, and it's been happening for years. All right. Thank you. Let's hear from Ms. Sundararajan. Ms. Sundararajan. Good morning. May it please the Court. My name is Thayla Sundararajan, and I represent the Federal Communications Commission. There's been some discussion this morning about the short-spacing deficiency with the student loan station, and I'm happy to address that, but before I do, I would point out to this Court that the other short-spacing deficiency with the Delaware station, WJBR, is a separate and independent reason for dismissing press's application. That deficiency involves a straightforward application of the Commission's rules that press failed to even address in its reply brief, despite the fact that it was raised by both the Commission and the intervener, and press's failure to cure that deficiency or seek a waiver of the rule, which it could have done, renders its application defective on the basis of the Delaware deficiency alone. And was that ground relied on by the Commission? I'm sorry, Your Honor? Was that a ground relied on by the Commission in the decision petitioned from? The Commission discussed both deficiencies, but so we discussed both deficiencies, and I'm not sure we used the term independent and separate, but it's clear that either one of these deficiencies sinks the application. You don't need two deficiencies to make a minor modification application defective. All you need is one, and so the Court may not even reach the issue with the student loan station. So with respect to the Delaware deficiency, the note to 73.203 is directly on point here, and I would refer Your Honors to our Commission's brief, page 7 of the appendix, where you can see the language. So that note says that if you are a minor modification applicant seeking to change your channel, you must, quote, meet the minimum spacing requirements of section 72.307 at the site specified in the application without resort to the provisions of the Commission's rules permitting short space stations as set forth in section 73.213. And Mr. Cole has said you're foreclosed from relying on that here because the Commission didn't rely on that in its decision. Your Honor, as this Court has long held, the issue is whether the agency's path is reasonably discerned. Yes, you're right, it's not cited in the order. The note is a common-sense illustration of the fact that when you are grandfathered, you are grandfathered to the situation you were in at that time. So decades ago when we had amended our rules to increase the required minimum distance between stations, we suddenly had all of these stations that were out of compliance with the new rules through no fault of their own. So we said, okay, rather than moving all these stations and causing... Exactly. We grandfathered at the channel they were on at that time. They weren't compliant with the rules at any old channel. It was specific to that channel. And so that's what the note says. You're grandfathered to the channel you are, but if you want to change your channel, you thereby lose your grandfathering rights. So the press cannot rely. I'm having a little trouble reconciling. So section, is it 73.213, suggests that grandfathered short-spaced stations may be modified or relocated. Typically, I assume that's pursuant to a minor modification as long as they meet the minimum interference and public interest requirements. So then if 73.203 says you can only do a modification, if you could show that doesn't result in short-spacing, then how can the 73.213 flexibility ever take effect or be borne out in practice? So here, Your Honor, where there is a change in channel, set the note to 73.203 applies. So if you're changing your channel, you must meet the general minimum distance separation rule outlined in 73.207. You cannot rely on the exception to that general rule, which is outlined in 73.213. I thought, didn't the FCC opinion specifically say a counsel appellant needed to seek a waiver? The deficiency letter that the Bureau sent to press told them, identified two deficiencies. In that letter, there was no specific language they needed to request a waiver. I thought they were specifically told that. In the letter, I don't believe the waiver language is actually used in the letter, but we do say that if your defects are not corrected within 30 days, your application will be dismissed with no further opportunity for amendment. Press is represented by experienced counsel who regularly appears before the FCC. They are well aware that our rule on defective applications says that if you have an application that is deemed defective and is not accompanied by a request for a waiver, it will be dismissed. I thought in answer to Judge Pruitt's question, counsel said, yes, we were notified that we had to seek a waiver. My recollection of the letter that press was sent did not use that exact language, you must cure or seek a waiver, but if press is conceding that they received notice of a waiver, then all the better. But in any event, the Bureau wasn't hiding the ball here. We told them that there are two deficiencies here. We gave notice and an opportunity to cure, or they could have sought a waiver and had every opportunity to do that, and instead they rejected those options. And as Judge Silberman, as you pointed out, that was a costly mistake for them. They could have sought a waiver. So with respect to the Delaware deficiency, the note to 73.203 is directly on point here. Press did not even wrestle with that language in its reply brief. That deficiency alone is fatal to press's application. In other words, your position is you cannot rely on the grandfather status of the station to which you would like to move. That's right, Your Honor. That is your legal position. That's right. And I gather your legal position is if you want to do that, you have to seek a waiver. That's right. That's right, Your Honor. And what's your position in response to the basic argument that Mr. Cole was making, that the commission lacks authority to have a policy prioritizing incumbent applications over new applications after a license has lapsed and there's been unlawful continued broadcasting? So Section 307 of the Communications Act does not specify a remedy for what happens when a license expires. And Section 707 also does not specify a remedy in a circumstance like this, where there is no renewal application that has been filed. Now, in comparison, there are other provisions of the Communications Act that divest the commission of discretion because the remedy is stated in the statute. Here we don't have that. A slightly different question, which is given that 301 says a license shall be eight years and only eight years and no other rights are accorded, does the commission have any other source of authority by which it says, yeah, we're not according them any rights, but we are coming up with a housekeeping practice and policy that says people who have not renewed are nonetheless not going to be subject to cutoff by new filers if we think it's in the public interest, and so we're going to take that position. What would be the authority for that? Because I think Mr. Cole is saying you are acting contrary to the statute by even having such a policy. So as we describe in Paragraph 10 of the commission's order, one of the fundamental goals of the Communications Act is to preserve continuity of service and avoid disruptions in service to the public. So if you have a radio station that's been on the air for years and years, has a steady base of listeners That's a policy call. Where is the legal support? Judge Piller is asking you, where do you get legal support for the proposition that the statute language, which cuts off rights, does not preclude you from granting a priority? The legal support, Your Honor, is that the language of the statute is silent as to what the consequences are when a station's license expires. And as this Court has long held, where Congress includes specific language in one section of the Communications Act and not the other, presumption is that the exclusion is intentional. So here, Congress intended to leave to the FCC's discretion how to fashion remedies in a circumstance like this, where a high school station's license has undeniably expired. But here, the press is asking you to look at the grant of the renewal application in isolation. But that's not what we can do here. You have to look at everything that the Commission did. We imposed a significant monetary forfeiture of over $6,000 to this high school station. We also required them to abide by a number of requirements through a compliance plan. So we imposed penalties. We certainly didn't let them go scot-free, but consistent with preserving continuity of service, we reasonably determined that we were not going to simply yank this license, yank this station off the board. So you're relying, for example, on Section 303, general powers and duties of the Commission, 309, authority to set licensing criteria and renewal criteria. Is that what you're looking to more generally, rather than just the negative implication that Mr. Cole would point to from 301? Yes, Your Honor, that's right. We're relying on our public interest authority here. If there are no further questions, we would ask that the Commission's order be affirmed. Thank you. Thank you. And we have an argument from Mr. Murchison for intervener. Mr. Murchison. May it please the Court, my name is Matt Murchison. I'm sorry, the clock says two minutes, but the schedule I have says three minutes. Does Mr. Murchison have, we'll give you three minutes. That's going to change your argument. Take a deeper perspective. May it please the Court, my name is Matt Murchison. I'm serving as pro bono counsel for the Atlantic City Board of Education, the licensee of WHAM. I think just first to put a finer point on the short spacing issue that you've heard from both counsel on, with respect to the WJBR and WZBZ short spacing arrangement, I think Judge Silverman, you put your finger on the key issue here, which is that this, what press sought to do here was really unprecedented. They sought to undertake an involuntary channel change and seek refuge under the grandfathering provision of Section 73.213. That was specifically identified in the deficiency letter, I believe footnote three. And I think even setting aside if it were the case that they would need to seek a waiver, again, this is kind of an unprecedented situation, but if that were the way out of this, I think any lawyer would kind of come up with that by looking at the deficiency letter and seeing the rules that were identified as having been violated. I would also just respond to Judge Wilkins' question about the, you know, Chenery and Section 73.203 note, the fact that it wasn't specifically identified in the commission's order. I don't think that presents a Chenery issue because I think as commission's counsel has ably pointed out, that was what they were doing in the order. I think it's reasonably discernible from the order that that's precisely the policy they set out to carry out in the order. They have this rule, 73.207, which sets forth the minimum spacing requirements for these stations. That says 113 kilometers for a distance between a Class A and a Class B station. Here it's undisputed that the stations were 105 kilometers apart. You're talking about the Delaware station? Yes. Yes, Your Honor. And, you know, that 73.203 note says you can't rely on the grandfathering provisions of 73.213. That's the whole discussion in the order, and I think it's also clear from the deficiency letter and from, you know, the Bureau's order, which are obviously also in the record. I'd also just point out that, you know, on this public interest question, Mr. Cole referenced, you know, the fact that this might result in some, you know, lessening of the short spacing. First of all, that is an issue that really is within the heartland of the commission's discretion here, you know, allocating frequencies, figuring out where stations should be, what the public interest is. And I'd also just point out that, you know, the upshot of PRESS's application, if it were granted in full, would be the loss of a broadcaster. I mean, WAJM would go off the air. What's your position, Mr. Murchison, on this Section 301 question? And is it your position that your client had a right to renew the license after its expiration? And if so, how do you square that with Section 301? Or is it, I mean, you also talk about a due process right. And how does that square with Section 301? Sure. So I'll take the statutory question first. So I think, you know, if you look at Section 301 in the context of Sections 307 and 309, I think it becomes clearer what the rights are that are involved here. So if you look at, for instance, Section 309H, it sets forth the statement that must be included in the license itself in order to effectuate Sections 301 and Section 307C1, which sets forth, you know, the eight-year period. And it says, the station license shall not vest in the licensee any right to operate the station, nor any right in the use of the frequencies designated in the license. So that seems quite different from the application of a processing policy to decide, you know, which applications get priority over others. That seems to be something that's squarely within the Commission's discretion. And actually the Supreme Court in the Popsville case, which we cite in our brief, I think makes this clear. That case says, the subordinate questions of procedure in ascertaining the public interest when the Commission's licensing authority is invoked, which is this case, including, quote, whether applications should be heard contemporaneously or successively are explicitly and by implication left to the Commission's own devising. I think that's precisely the situation here. And I don't think according, you know, procedural priority is what Congress intended when they used the word rights in Section 301. You push the boundaries of that a little bit by characterizing what the school board has at stake here as a property right protected by due process. Yeah, so to address the due process question, I think, you know, due process notice, I think what we're really aiming at, and I think what the Commission identified in its order as a due process issue, is that consistently the Commission has, at a minimum, allowed late filed renewal applications to be filed. And it has penalized that late filing through the imposition of a fine, which it did here. It has penalized the unauthorized operation of the station in those situations, and it's done so here. Is there any other case where the FCC has given priority to a station, arguably, who lost its rights under the statute vis-à-vis another applicant? I think the Superior case is along those lines. It was a similar situation. That's clearly a point, isn't it? No, I mean, the timing in that one was a bit different. But I think that's the closest thing we have to the situation where you had a similar arrangement of parties. You had one that had not filed its renewal application on a timely basis, and you had another that had come in and tried to modify their facilities in a way that would affect that. I'm sorry, you didn't have to read that question. I think that's right, Your Honor. But back to the due process issue. Do you think we should avoid reaching that question? I think, no, I don't think it's necessary. I think it's entirely consistent with the statute and the Commission's rules to look at this as a first-time issue and realize that the Commission has discretion in assigning priority to applications before it. And just to close the loop on the due process question, I think the issue there is just that there is this longstanding policy of accepting late-filed renewal applications. It would have been a hard swerve indeed if the Commission had suddenly said, you know, we're changing our procedure here. Certainly you could have that policy interpreting rights not to be implicated if no one else is involved. But if someone else is involved, you have a more acute question as to the statutory's meaning. Yes, Your Honor, certainly. And the interplay of this due process question is fraught in that respect. I mean, it's also tough under due process if it's a matter of grace on the part of the Commission. Within its authority, but nonetheless a matter of grace, the due process argument becomes a pretty steep one. I think perhaps that's correct. I think it is true that the Commission looked at due process as a relevant factor here. And I just kind of actually draw the contrast between, you know, this case and the SNR wireless case that you, Judge Pillar, put out just a month ago where, you know, you had a similar situation where you had, you know, in an abstract way, where there was this need to cure and this idea that you should be able to negotiate a cure and that the line of cases that had preceded that didn't really put you on notice that you didn't have the ability to cure. I think the Commission's recognition of the due process interests at stake here are kind of what should have happened in that case. It realized that there was an opportunity to negotiate a cure with WAJM, and that's precisely what it did with its consent decree. All right. If there are no further questions. We'll give Mr. Cole a couple minutes for rebuttal. Did he have any time left? We'll give you a minute. I'll get started. Your Honor, with respect to the notion of relying on the public interest, I would refer the Court to Network IP, the Network IP decision, which relates to waivers of deadlines and other SEC rules. In Network IP, this Court said the criteria used to make waiver determinations are essential. If discretion is not restrained by a test more stringent than, quote, whatever is consistent with the public interest, then how to effectively ensure power is not abused. In this case, we had press four years after the deadline had passed filing an application, which cut off the rights of anybody else, including WAJM, assuming that WAJM still had any rights. And, by the way, when a license expires, it expires. That's what Congress said in 301 and 307. It's got eight years. The licensee knows if it wants to renew it. It knows how to renew it. It's not a big deal. And the fact that it failed not for three months, four months, but for four and a half years. Would it make a difference in your view if it were three months or four months? Or how about a week? To my way of thinking, it doesn't make any difference at all. That's what I thought. The Commission's Superior Broadcasting case is the only other case that we know about. And there the Commission said 30 days. So, in your view, a week is too long. Yes. 30 days is too long. In fact, the policy that the Commission has now adopted to try to tie this, that's unlawful also. No, no, that's fine. Because the Commission's rules say you have to file your license renewal application four months before it expires. And if you don't, we're going to send you a letter saying. We'll send you a letter, but we'll send you a letter before it expires. So, you will still have a chance to file a renewal application before it expires. And once the renewal application is filed, then the statute kicks in. You've got a pending renewal application. Yes, it's late. Yes, you'll probably get fined for that. But. But if you miss that by a day. But if you miss the expiration by a day, my view is the statute says tough. You know, you've got no rights. Public's out of luck. And so, in our situation, you've got. But in the case in which there's no other party involved, the FCC could simply treat the application as if it was an application for a new license. And give approval. Not that easy, Your Honor, because in order to file for a new license, you have to go through a different set of processes. And so, the commission would have to construct some reinstatement or some process along those lines. Query as to whether or not that would still be consistent, but that's what they would have to do if there were no intervening party like press. Thank you, Mr. Call. Thank you, Your Honor. Case is submitted.
judges: Pillard, Wilkins, Silberman